IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| E3 BIOFUELS-MEAD, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 08-CV-2674-CM |
| ) | |
| ZURICH AMERICAN INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORADUM AND ORDER

This is an insurance coverage case arising from a February 9, 2007 boiler explosion during the original construction of an ethanol-production facility located near Mead, Nebraska ("the Mead Facility"). Plaintiffs—the insured—seek a declaration of insurance coverage and an award of insurance proceeds for property damage and for delay in completion under Completed Value Builders Risk Policy No. IM 5371515-00 ("the Policy") issued by defendants.

Currently before the court are two motions for partial summary judgment (Docs. 160 and 187). Summary judgment is only appropriate when there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Despite the extensive briefing before the court, there are very few material facts that are properly supported and not genuinely disputed. *See id.* at 56(c) (explaining procedures for supporting factual positions); *see also* D. Kan. Rule 56.1 (same). These facts include:

- Plaintiffs owned the Mead Facility.

- Defendant insured plaintiffs under the Policy. The Policy insured the construction of the Mead Facility. The Policy also includes an endorsement for Delay in Completion coverage.

- The Mead Facility was designed to be powered by steam produced by two boilers, known as Boiler 601 and Boiler 602.

- On February 9, 2007, plaintiffs were engaged in the initial start-up of the two boilers. During the start-up process, there was an internal explosion in Boiler 602.

- On April 26, 2007, the Mead Facility began producing some amount of ethanol that was marketed and sold to end users.

- In November 2007, the Mead Facility closed and plaintiffs declared bankruptcy.

Based on these facts, the court determines judgment as a matter of law is warranted on the following issues and, accordingly, grants summary judgment. To the extent issues were raised in either summary judgment motion and are not discussed below, summary judgment is denied.

**Nebraska Law**

Nebraska law governs interpretation of the Policy. Under Nebraska law, an insurance policy is treated like any other contract. *Austin v. State Farm Mutual Auto. Ins. Co.*, 625 N.W.2d 213, 217 (Neb. 2001). The clear and unambiguous terms of a policy are to be accorded "their plain and ordinary meaning as the ordinary and reasonable person would understand them." *Rickerl v. Farmers Ins. Exch.*, 763 N.W.2d 86, 90 (Neb. 2009). If the terms are ambiguous—that is susceptible to more than one reasonable interpretation—then the court "may employ rules of construction and look beyond the language of the policy to ascertain the intentions of the parties." *Katskee v. Blue Cross/Blue Shield of Neb.*, 515 N.W.2d 645, 649 (Neb. 1994).

**Uncontested Issues Not Warranting Further Discussion**

After reviewing the briefs, the parties agree on the following issues. Accordingly, the court grants summary judgment on these issues without further discussion.

- The February 9, 2007 boiler explosion is a covered peril under the Policy.

- Plaintiffs were not required to repair or replace Boiler 602 before being paid by defendant.

- As of February 9, 2007, the Policy had not been terminated under Sections B(6)(A)(1) through B(6)(A)(4). These include (1) final acceptance by the owner, (2) the expiry of the Named Insured's interest, (3) cancellation of coverage, and (4) the passing of the Policy's stated expiration date.

- Section B(6)(A) explains that coverage will cease when "[a]n owner places insurance on any portion of the work which has been declared and accepted as Substantially Complete[.]" (Doc. 189-6 at 14.) Coverage for the Mead Facility, or any portion thereof, did not terminate before May 1, 2007, under this provision.

**The "Cost of Making Good Exclusion"**

Plaintiffs request four declarations related to the cost of making good exclusion in Section B(4)(B). In relevant part, this provision excludes "[t]he costs which would have been incurred to rectify any . . . [f]aulty or defective workmanship . . . [or] [f]ault[y] . . . design . . . had such rectification been effected immediately prior to the manifestation of loss or damage." (Doc. 189-6 at 22.)

The briefing regarding these four declarations is muddled by several disagreements over tangential issues. The court does not address the tangential issues because, as explained below, the parties do not dispute the express declarations requested by plaintiffs. Accordingly, the court grants summary judgment on these four declarations.

Plaintiffs first request a declaration that this exclusion does not apply to the February 9, 2007 explosion damage. Defendant does not contest this issue. Defendant acknowledges that it is arguing that the explosion was caused in part by the defective design of the boiler system. But defendant

-3-

concedes that Section B(4)(B) only excludes the cost of correcting those design/workmanship errors and does not exclude the explosion damage that resulted from those errors. Therefore, summary judgment is appropriate on this issue.

Read together, plaintiffs' second and third declarations argue that the alleged acts of faulty workmanship and defective design outlined in Section 4(B)(15) of the Pretrial Order do not support application of this exclusion to the February 9, 2007 boiler explosion. Defendant agrees and expressly states that this section of the Pretrial Order "relates only to the cause of the 'hot spots,' not the cause of the explosion." (Doc. 197 at 25.) Therefore, these declarations are not contested and summary judgment is warranted.[1]

The last declaration plaintiffs request is that this exclusion does not apply to Delay in Completion coverage. Defendant does not contest this issue. Accordingly, plaintiffs are entitled to summary judgment on this issue as well.

**The Guarantee Or Warranty Exclusion**

Plaintiffs seek a declaration that the guarantee or warranty exclusion in Section B(4)(K) does not apply as a matter of law. This provision excludes "[l]oss or damage covered under any written or implied guarantee or warranty . . . but only to the extent of recovery from such written or implied guarantee or warranty." (Doc. 189-6 at 11.) The provision is unambiguous and the plain language is that coverage is excluded to the extent that plaintiffs collect under a guarantee or warranty. If plaintiffs' recovery under the guarantee or warranty is inadequate, plaintiffs may recover the remainder under the Policy.

---

[1] The parties dispute the meaning of the Pretrial Order entered by the magistrate judge. After reviewing the Pretrial Order, the court agrees with defendant that Section 4(B)(15) is not a comprehensive list of all acts upon which defendant is basing this exclusion. Plaintiffs argue this understanding of the Pretrial Order is inconsistent with the magistrate judge's order during the pretrial conference. But plaintiffs did not provide any evidence—such as relevant portions of the pretrial conference recording—supporting this argument.

Plaintiffs' requested declaration requires the court to apply the plain language of this provision to the facts of this case. But there are genuine disputes of material fact that preclude summary judgment on this issue. For example, the parties dispute the extent of damage to Boiler 602 as well as the extent to which the damage to Boiler 602 was repaired under a warranty or guarantee. Accordingly, the court denies summary judgment on this issue.

Before leaving this exclusion, however, the court addresses an additional issue raised by defendant. To the extent plaintiffs argue that breaches of contract by a vendor are covered perils under the Policy, the court disagrees. The plain language of the Policy is that it insures against "direct physical loss of or damage to property insured . . . ." (Doc. 189-6 at 9.) Therefore, the Policy does not cover breach of contract claims.

**<u>Consequential Loss Exclusion And Plaintiffs' Requested Damages</u>**

The parties devote significant briefing to plaintiffs' requested damages. Given the language of the consequential loss exclusions in the Policy, *see* Doc. 189-6 at 10 (excluding consequential loss "of any kind") and 27, as well as Nebraska case law regarding the tort of insurance bad faith, *Braesch v. Union Insurance Co.*, 464 N.W.2d 769 (Neb. 1991), the court has serious concerns about the availability of the damages requested by plaintiffs in Sections 10(a)(5) through (8) of the Pretrial Order. The court also questions the viability of plaintiffs' requested damages resulting from lack of steam to the rest of the facility. But, given the limited record before it, the court does not make formal and final rulings on these issues at this time and denies summary judgment. To be clear, the court cautions plaintiffs about its concerns, but plaintiffs may raise these arguments to the court during trial.

**<u>When Coverage Under The Policy Begins And Ends</u>**

Section B(6)(A) of the Policy explains when coverage begins and ends. In relevant part, this section provides that if "[a]ny portion of the work is occupied or placed into **COMMERCIAL**

**SERVICE\*** for its intended purpose," then "coverage as respects such portion of the work shall cease as of . . . the date of **COMMERCIAL SERVICE\*** . . . ."  (Doc. 189-6 at 14–15.)  The parties agree that neither the Mead Facility, nor any portion thereof, was placed into commercial service (as that term is defined by the Policy) before April 26, 2007.  But the parties dispute whether coverage under the Policy terminated between April 26, 2007, and May 1, 2007, based on this provision.

Defendant argues that coverage ceased during these dates because both the Mead Facility and the boilers were placed into **COMMERCIAL SERVICE\*** before May 1, 2007.  The only properly supported and undisputed fact is that some unknown amount of ethanol was produced on April 26, 2007, and subsequently sold.  This lone and vague fact does not warrant summary judgment.

Plaintiffs take a different approach and argue that even if the Mead Facility was placed into commercial service during these dates, coverage under the Policy would still exist under the Policy's "hot testing" coverage.  The court disagrees.  The hot testing provision extends coverage to include additional perils—namely, "direct physical loss or damage to property insured which is caused by or results from **HOT TESTING\***."  (Doc. 189-6 at 14.)  This provision does not change when coverage under the Policy begins and ends.  That issue is controlled by Section B(6)(A).  And the clear, unambiguous, and mandatory language of that section is that coverage for a portion of work "shall cease" when that portion of work is placed into **COMMERCIAL SERVICE\***.

In opposing plaintiffs' motion, defendant argues that the hot testing provision is irrelevant to coverage for the boiler explosion.  The court agrees that—based on the Pretrial Order—there is no claim in this case that (1) the explosion was caused by hot testing, or (2) plaintiffs suffered a covered loss during a period of hot testing.  But the hot testing provision is relevant.

Specifically, the Policy explains that **COMMERCIAL SERVICE\*** "shall be deemed to have occurred when [the Mead Facility] or any portion thereof has been put to its intended use . . . ."  (Doc.

189-6 at 23.) The phrase "put to its intended use" is not defined. But the meaning of this phrase is informed by other provisions of the Policy, including the hot testing provision. In other words, it is unlikely that "put to its intended use" applies in a manner that renders the hot testing coverage meaningless.[2]

**Delay In Completion**

Plaintiffs ask the court to enter a declaration that the "period of Delay under [the Policy] ends when the entire [Mead Facility] can be placed into operation for its full intended and normal use following the completion of construction of the entire Insured Project." The court declines this invitation because the requested declaration ignores the plain language of the Policy.

Specifically, the Policy obligates defendant to indemnify plaintiffs for certain costs "arising out of the resulting **DELAY\*** in completion of the project . . . ." (Doc. 189-6 at 27.) **DELAY\*** means "[t]he period of time between [May 1, 2007] and the actual date on which commercial operations or use and occupancy can commence with the exercise of due diligence and dispatch." (*Id.* at 28.) These provisions are clear and unambiguous. Delay in completion ends on the date that commercial operations or use and occupancy of the Mead Facility can begin with the exercise of due diligence and dispatch.

Defendant also moves for summary judgment based on this provision. Defendant asks the court to enter summary judgment on plaintiffs' claim for insurance proceeds for delay in completion because the Mead Facility was in commercial operation and was used and occupied before May 1,

---

[2] To the extent plaintiffs suggest that "put to its intended use" does not occur unless and until the Mead Facility or a portion thereof is operating as designed and at full capacity as described in plaintiffs' contracts with their vendors, the court is unconvinced. This evidence may be relevant, but the court is skeptical that this evidence controls the application of this phrase.

2007 (i.e., there was no **DELAY\***).  Similar to defendant's argument for **COMMERCIAL SERVICE\***, the record before court does not warrant summary judgment on this issue.[3]

**Other Issues**

Section 15(d) of the Pretrial Order provides the briefing deadlines for motions in limine.  Given the specific characteristics of this case, the court amends these deadlines as follows:

- All motions in limine, other than those challenging the propriety of an expert witness, shall be filed no later than March 15, 2013.  Briefs in opposition to such motions shall be filed no later than March 27, 2013.  Reply briefs in support of motions in limine shall not be allowed without leave of court.

As the trial date approaches, the court will be contacting the parties to schedule a status and/or limine conference.  If the court has not contacted the parties by March 1, 2013, about this conference, the parties may jointly approach the court.  In addition, the court orders all parties to submit proposed findings of fact and conclusions of law by April 12, 2013.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 160) is granted in part.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Declaratory Judgment Claim (Doc. 187) is granted in part.

**IT IS FURTHER ORDERED** that the briefing deadlines for motions in limine in Section 15(d) of the Pretrial Order (Doc. 169) are amended.  All motions in limine, other than those challenging the propriety of an expert witness, shall be filed no later than March 15, 2013.  Briefs in

---

[3] There is some confusion in the briefing regarding defendant's ability to argue that the Mead Facility was used and occupied before May 1, 2007.  Both parties refer to "occupancy," which is a separate and defined term under the Policy.  The court makes no ruling on this issue and will address it—to the extent necessary—in a motion in limine or at trial.

opposition to such motions shall be filed no later than March 27, 2013.  Reply briefs in support of motions in limine shall not be allowed without leave of court.

**IT IS FURTHER ORDERED** that all parties must submit proposed findings of fact and conclusions of law by April 12, 2013.

Dated this 14th day of December, 2012, at Kansas City, Kansas.

                                                __s/ Carlos Murguia_____
                                                **CARLOS MURGUIA**
                                                United States District Judge