# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

E3 BIOFUELS-MEAD, LLC, et al., )
)
        **Plaintiffs,** )
)
v. ) Case No. 08-CV-2674-CM
)
ZURICH AMERICAN INSURANCE )
COMPANY, )
)
        **Defendant.** )
_____ )

## MEMORANDUM AND ORDER

This is an insurance coverage case arising from a February 9, 2007 boiler explosion during the original construction of an ethanol production facility located near Mead, Nebraska. Among other things, the parties dispute the origin of the explosion, the damage caused by the explosion, and the foregone earnings that resulted from the explosion. Currently before the court are seven motions to exclude expert testimony (Docs. 178, 180, 182, 184, 186, 190, and 192). After a detailed review, the court denies each motion.[1]

## Applicable Law

Federal Rule of Evidence 702 governs the admissibility of expert testimony. This rule requires the court to act as a gatekeeper and ensure that expert testimony is relevant and reliable. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) (discussing relevance and reliability); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (extending gatekeeping role to all expert testimony). The court must perform this gatekeeping function in a bench trial even though the concern about dubious expert

---

[1] The briefs make plain that this is a contentious and vigorously disputed lawsuit. The court, however, **will not tolerate** dismissive sarcasm and inflammatory language at the bench trial.

testimony misleading the jury is not present. *Attorney Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009).

**Dr. Crispin Hales**

Dr. Hales is plaintiffs' engineering expert. Defendant argues that his testimony relating to the cause of the hot spots on the shell of Boiler 602 is based on mere speculation and is, therefore, unreliable. The court disagrees. **First**, Dr. Hales did not merely assume the conclusion that he purports to prove. Instead, his conclusions are based on a reliable scientific method that is described in his deposition testimony and August 23, 2012 affidavit. (Doc. 203-17 at 23–28, 46–48, 62–63, and 66–68; Doc. 203-1 at 2.) Defendant's related argument regarding the need for additional calculations goes to the weight of Dr. Hales' testimony, not the admissibility of it.

**Second**, defendant is correct that Dr. Hales did not perform any testing to verify his conclusions. But this criticism applies equally to defendant's engineering expert and boiler expert. Testing is not a prerequisite to admissibility. *See, e.g.*, *Dorn v. BMW of N. Am., LLC*, No. 09-1027-WEB, 2010 U.S. Dist. LEXIS 103725, at *14 (D. Kan. Sept. 30, 2010) (explaining that Rule 702 does not require "actual testing by the expert"). And, in this case, testing was not possible because the boiler was significantly altered by the time of inspection. Given the facts, the lack of testing does not automatically render Dr. Hales' testimony unreliable.

**Third**, Dr. Hales considered alternative explanations for causation. This is all the law requires. Contrary to defendant's argument, the law does not require Dr. Hales to disprove all alternative causes through analysis or testing before his testimony is admissible. *See, e.g.*, *Lobo Well Serv., LLC v. Marion Energy, Inc.*, No. 07-273, 2011 U.S. Dist. LEXIS 38767, at *12–13 (D. Utah Apr. 8, 2011) ("The case law does require an expert to consider alternative explanations of causation, but it does not require that the expert must exclude all other potential causes.") (citing *Bitler v. A.O.*

*Smith Corp.*, 400 F.3d 1227, 1238 n.6 (10th Cir. 2004)).   This is particularly true given that some of the alternative causes arise from disputed issues of fact.

The final issue involving Dr. Hales is defendant's argument that his August 23, 2012 affidavit asserts two new opinions that should be excluded as untimely. *See* Fed. R. Civ. P. 37 (allowing court to exclude untimely disclosed expert testimony). Defendant argues that the affidavit, which states that Dr. Hales considered and rejected the vibration issue, is inconsistent with his deposition testimony. The relevant deposition testimony is vague, but it can be read consistently with Dr. Hales' affidavit. Absent additional contradictory evidence, the court takes Dr. Hales at his word and determines that his affidavit merely elaborates on his previous opinions. Defendant also argues that the affidavit includes a new opinion on the causation of the hot spots on Boiler 601. But the relevant paragraphs merely provide further explanation for his fourth opinion in his rebuttal report and additional discussion on the exhibit that forms the basis for this opinion. The court denies defendant's motion.

**Joseph H. Dabrowski**

Mr. Dabrowski is defendant's engineering expert. Plaintiffs contend that Mr. Dabrowski's opinions are unreliable because they are based on inadmissible hearsay instead of actual testing or measurements. These arguments are unpersuasive. Plaintiffs' argument regarding testing fails for the reasons previously discussed—namely, testing is not required given the facts of this case. And, by the time of inspection, meaningful measurements of Boiler 602 were not possible. In addition, an expert is allowed to rely on inadmissible evidence so long as experts in the particular field would reasonably rely on the same kinds of facts or data. Fed. R. Evid. 703. Mr. Dabrowski's opinions are based on the same documentary evidence as all of the other liability experts in this case (e.g., contemporaneous documents and eye-witness accounts). (*See* Doc. 183-1 at 17 (outlining sources Mr. Dabrowski relied

in forming his opinions).) It follows that he relied on the same kinds of facts or data as other experts in the field.

The remaining arguments made by plaintiffs attack the factual basis of Mr. Dabrowski's opinions. For example, plaintiffs contend that Mr. Dabrowski's opinions improperly relied on the results of the hydrostatic pressure test, the observations of the Nebraska Authorized Boiler Inspector, and the testimony of Mr. Curran regarding the tadpole gasket. These challenges are appropriately addressed by cross-examination and do not undermine the reliability of Mr. Dabrowski's methodology. *See RMD, LLC v. Nitto Ams., Inc.*, No. 09-2056-JAR, 2012 U.S. Dist. LEXIS 158107, at *28 (D. Kan. Nov. 5, 2012) ("The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (internal quotation omitted). The court concludes that Mr. Dabrowski's testimony is based on a reliable exercise of his engineering expertise and boiler experience to the available facts and is admissible. Plaintiffs' motion is denied.

**Mark E. Rudek**

Mr. Rudek is defendant's boiler expert. Plaintiffs argue that his opinions should be excluded for three reasons. **First**, plaintiffs argue that Mr. Rudek's report is incomplete and contains insufficient information to satisfy Rule 702. This complaint is made too late. Any objection to the adequacy of Mr. Rudek's expert report was due several months ago. *See* D. Kan. Rule 37.1(b) (explaining that a motion to compel must be filed within 30 days). And plaintiffs cannot show any prejudice given that they deposed Mr. Rudek and had an opportunity to explore the bases for his opinions. *See In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2012 U.S. Dist. LEXIS 181506, at *43 (D. Kan. Dec. 21, 2012) (rejecting argument that expert report was incomplete). In addition, his

report—although brief—contains enough information for the court to perform its gatekeeping function.

**Second**, plaintiffs essentially argue that Mr. Rudek is not qualified to make his opinions because he lacks a college degree and has never examined a Saskatoon three-passer boiler that exploded due to accumulated fuel vapors. Rule 702 is not so rigid. Instead, this rule is flexible and expressly states that an expert may be qualified by "knowledge, skill, experience, training, or education . . . ." Fed. R. Evid. 702. Mr. Rudek has over thirty-five years of experience in inspecting and working with boilers. He was a boiler technician in the Navy. He was a boiler inspector at Hartford Steam Boiler Inspection and Insurance Company. He was the acting chief boiler inspector for the State of Minnesota. And he is the president and founder of Damarc Quality Inspections, which is a company that inspects boilers and investigates boiler accidents. Based on his years of experience and acquired knowledge, Mr. Rudek is qualified to offer the opinions expressed in the report. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (explaining that an expert's testimony must stay "within the reasonable confines of his subject area").

**Third**, plaintiffs again argue that Mr. Rudek's opinions are unreliable because he never inspected, measured, or tested the boiler. Testing is not required for admissibility and, regardless, was not possible in this case. *See supra* at 2. Mr. Rudek's failure to personally inspect the boiler and take measurements also does not render his opinions unreliable. By the time he was retained for this lawsuit, the boiler was inoperative and the condition of the boiler was substantially altered. Therefore, he relied on the contemporaneous observations and notes of his employee, Mr. Mark Makkonen.[2] These are acceptable sources of facts and data, and Mr. Rudek's reliance on them does not justify

---

[2] Mr. Makkonen visited the Mead Facility on February 11-14, 2007, because the State of Nebraska retained Damarc to help investigate the explosion. Mr. Makkonen interviewed witnesses, inspected the boiler, reviewed company documents and, subsequently, issued a report.

exclusion. *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.").

Plaintiffs' remaining arguments go to the weight to be given these opinions. For example, several arguments relate to factual disputes (e.g., whether the boiler was repaired). Resolution of these disputes may impact Mr. Rudek's credibility. But none of these arguments render his opinions unreliable. Based on its review of his report and deposition, the court determines that Mr. Rudek's opinions are sufficiently reliable to warrant admission. The court denies plaintiffs' motion.

**Bruce Babcock**

Dr. Babcock is defendant's damage expert. He opines that a reasonable estimate of the amount of ethanol that would have been produced by plaintiffs during the first year of full operation is 18 million gallons (i.e., 90% of nameplate capacity). Plaintiffs argue that this opinion is neither relevant nor reliable. The court disagrees. Dr. Babcock's opinion is relevant because it addresses and contradicts the production rate assumed by plaintiffs' expert in calculating foregone earnings. *See* Fed. R. Evid. 401 (providing the test for relevant evidence).

His opinion is also reliable. Dr. Babcock applied his twenty-five years of experience in analyzing commodities markets to several reliable and acceptable sources of information. These sources include statistics compiled by U.S. Department of Energy's Energy Information Agency, statistics furnished by the Renewable Fuels Association (a national trade association for the U.S ethanol industry), statistics from Iowa State University on operating margins, and information filed with the Securities and Exchange Commission by the operator of several new ethanol plants. Based on its review of his expert report and deposition testimony, the court concludes that Dr. Babcock's opinion is based upon adequate facts, is sufficiently reliable, and should be admitted. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (explaining that the court must determine that the

"method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements").

Plaintiffs point to various weaknesses in Dr. Babcock's assessment such as his use of arithmetic averaging and the existence of various sources of industry literature that contradict his opinions. But these weaknesses go to the weight to be afforded Dr. Babcock's testimony and do not undermine the reliability of his opinion. *See, e.g.*, *Law v. NCAA*, No. 94-2053-KVH, 1998 U.S. Dist. LEXIS 6640, at *24 (D. Kan. Apr. 23, 1998) (rejecting reliability challenge to expert that used arithmetic averages and determining that the method for exposing any limitations in the law of averages is through cross-examination, presentation of contrary evidence, and careful instruction); *Burton v. R.J. Reynolds Tobacco Co.*, 183 F. Supp. 2d 1308, 1317 (D. Kan. 2002) (determining that cross-examination is the appropriate method for challenging literature that is inconsistent with an expert's opinions). The court denies plaintiffs' motion.

### Steve W. Browne

Mr. Browne is plaintiffs' damages expert. He opines on plaintiffs' foregone earnings. Defendant's primary argument is that this opinion is unreliable because it ignores real-world facts such as the lack of hedging gains in the sales price of plaintiffs' ethanol, mechanical and operational problems at the facility that impact production rate, and plaintiffs' expenses for a management fee and applicable interest.

Having reviewed the submissions, the court determines that Mr. Browne's opinion should not be excluded based upon an alleged failure to consider relevant facts and data. His opinion is based upon sufficient facts, is built around reliable principles, and is derived by reliably applying these principles to the facts. Any shortcomings in his perceived failure to consider certain facts can be addressed during cross-examination. *See Musket Corp. v. Star Fuel of Okla., LLC*, No 11-444-M,

2012 U.S. Dist. LEXIS 144318, at *12 (W.D. Okla. Oct. 5, 2012) (finding that "any shortcomings in the alleged failure to consider relevant facts and data go to the weight, not the admissibility, of [the expert's] opinions"); *Cooper v. Old Dominion Freight Line, Inc.*, No. 09-2441-JAR, 2011 U.S. Dist. LEXIS 37488, at *16 (D. Kan. Apr. 6, 2011) (determining that expert's failure to consider other relevant facts go to weight and not to admissibility).

Moreover, Mr. Browne's affidavit indicates that he was aware of the challenged facts and explains how he accounted for them in formulating his opinion. For example, he recognizes that the ethanol actually sold by plaintiffs did not include a hedging gain and that plaintiffs' marketing contract with Aventine did not include hedging. (Doc. 204-5 at 6–7.) This makes sense, he explains, because the plant was still undergoing construction, production rates were unsteady, and Aventine was not hired to do hedging. (*Id.* at 7–8.) He then explains that he included a hedging gain in his calculation because—based on his experience—an ethanol production facility would have hedged if the facility was operating at steady state and not undergoing construction because the prices of ethanol and corn were sufficiently volatile. (*Id.* at 9.) He provides a similarly reasonable explanation for his assumptions regarding the production rate and his treatment of the management fee. (*Id.* at 10–14 and 16–17.)

Several of the other facts identified by defendant actually relate to disputed issues of fact or law. As one example, the parties dispute whether construction of the Mead Facility was completed in April 2007. Mr. Browne's treatment of the interest payments is based on plaintiffs' position on this factual issue. The parties also dispute the meaning of the definition of **SOFT COSTS\*** in the Policy. Mr. Browne applied plaintiffs' definition in calculating these costs. The court's resolution of these issues may impact the weight given to his testimony.

The one issue that requires further discussion relates to plaintiffs' actual sales of ethanol. Defendant argues that Mr. Browne's original report fails to account for actual sales of ethanol even though the Policy requires inclusion. Plaintiffs do not directly respond to this argument. Instead, plaintiffs point to Mr. Browne's rebuttal report. The court agrees that the terms of the Policy require Mr. Browne to consider actual sales in calculating **GROSS EARNINGS\***.[3] His rebuttal report does. Ultimately, the court will determine the amount of damages (if any) and can take into account any proposed damages that are inconsistent with the terms of the Policy.

Defendant also asserts two other challenges. Specifically, defendant argues that portions of Mr. Browne's opinions are unhelpful and irrelevant. The court disagrees. The challenged aspects of plaintiffs' damage claim survived summary judgment. (Doc. 219 at 5.) And Mr. Browne's opinion on actual investment and interest may be helpful to the court. *See Robinson v. Missouri Pac. R.R.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (explaining that "[d]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility") (internal quotation and citation omitted). The court denies defendant's motion.

**Philip Madson**

Mr. Madson is plaintiffs' expert. He is the President of Katzen International, Inc. Katzen licensed the ethanol production technology used to design and construct the ethanol portion of the Mead Facility. Mr. Madson opines that (1) the production rate of the Mead Facility is 24 million gallons of denatured ethanol per year, and (2) the Mead Facility "did not achieve commercial operation and was never placed into commercial service during the calendar year 2007." (Doc. 201-2 at 5.)

---

[3] The Policy defines **GROSS EARNINGS\*** as "Gross revenues from the planned operation of the **INSURED PROJECT\*** upon **OCCUPANCY\*** or **COMMERCIAL SERVICE\*** which are not realized during the **PERIOD OF INDEMNITY\*** and which would have been earned by the Named Insured if the **DELAY\*** had not occurred, less non-continuing expenses." (Doc. 189-6 at 28.)

Defendant argues that Mr. Madson's opinion regarding the production rate ignores the mechanical and operational problems at the Mead Facility. This is essentially the same argument defendant made to challenge Mr. Browne's production rate assumption. And it is similar to the argument plaintiffs made in challenging Dr. Babcock. Plaintiffs' experts and defendant's expert applied different methodologies in arriving at their opinions. But this disagreement not does automatically render any expert's opinion unreasonable, invalid, or unreliable. Instead, the differences in methodology and underlying facts can be addressed through cross-examination.

The court reviewed Mr. Madson's opinion. His opinions are based on his extensive experience in designing and constructing ethanol plants that utilize Katzen technology. This includes his personal involvement with the design and construction of the ethanol production technology at the Mead Facility. His opinion is based on sufficient facts, utilizes reliable principles, and appropriately applies those principles to the available facts. Defendant can cross-examine Mr. Madson regarding problems at the Mead Facility and the existence of published information that contradicts his opinion. These issues do not provide a basis for excluding his opinion.

Defendant also contends that his opinion on commercial service and commercial operation is irrelevant and unhelpful because he uses the wrong legal standard. A central issue in this lawsuit is whether the Mead Facility was in commercial operation. The parties also dispute whether the Mead Facility, or any portion thereof, was placed into **COMMERCIAL SERVICE\***. Mr. Madson's opinion is that these events did not occur. He then provides the criteria on which he based that opinion. He is neither improperly providing a legal conclusion, nor usurping the court's role of deciding facts at the bench trial. *See Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988) (stating that "[w]hile testimony on ultimate facts is authorized under [Federal Rule of Evidence] 704 . . . testimony on ultimate questions of law is not favored"); *Lobo Well Serv.*, 2011 U.S. Dist. LEXIS 38767, at *11–

12 (discussing the difference between opinion on an ultimate issue and drawing a legal conclusion). His opinion is admissible.

The final issue before the court is defendant's argument that Mr. Madson's affidavit includes new opinions on "intended use" and "industry standard." As noted above, the court may exclude untimely disclosed expert opinions. *See supra* 3; Fed. R. Civ. P. 37. And "[t]he orderly conduct of litigation demands that expert opinions reach closure." *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1334 (10th Cir. 2004). The court reviewed Mr. Madson's expert report and is concerned that his affidavit includes new opinions. Indeed, neither phrase is mentioned in his report. Defendant, however, raised these issues in its reply and plaintiff has not been heard on these issues. Given this procedural posture, the court determines that the best course is to deny relief on these issues without prejudice. Defendant is allowed to file a pretrial motion on this issue by April 12, 2013. Plaintiffs have until April 19, 2013, to file a response. These briefs shall not exceed seven (7) pages.

**IT IS THEREFORE ORDERED** that Defendant's Motion In Limine To Preclude The Testimony And Reports Of Plaintiffs' Expert Steve W. Browne (Doc. 178) is denied.

**IT IS FURTHER ORDERED** that Plaintiffs' *Daubert* Motion Pertaining To Defense Expert Bruce Babcock (Doc. 180) is denied.

**IT IS FURTHER ORDERED** that Plaintiffs' *Daubert* Motion Pertaining To Defense Expert Joseph H. Dabrowski (Doc. 182) is denied.

**IT IS FURTHER ORDERED** that Plaintiffs' *Daubert* Motion Pertaining To Defense Expert Mark E. Rudek (Doc. 184) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion In Limine To Preclude The Testimony And September 1 and December 6, 2011 Reports Of Plaintiffs' Expert Crispin Hales (Doc. 186) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion In Limine To Preclude The Testimony And December 16, 2011 Report Of Plaintiffs' Expert Philip Madson (Doc. 190) is denied. The court denies without prejudice defendant's arguments regarding new opinions asserted in Mr. Madson's affidavit. Defendant is allowed to file a pretrial motion on this issue by April 12, 2013. Plaintiffs have until April 19, 2013, to file a response. These briefs shall not exceed seven (7) pages.

**IT IS FURTHER ORDERED** that Defendant's Motion In Limine To Preclude The Testimony And March 7, 2012 Report Of Plaintiffs' Expert Philip W. Madson (Doc. 192) is denied.

Dated this 29th day of March, 2013, at Kansas City, Kansas.

                                                 s/ Carlos Murguia
                                                 **CARLOS MURGUIA**
                                                 United States District Judge